UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRELL R. ZIBBLE,

    Plaintiff,                                       Case No. 18-12910
                                                        District Judge Victoria A. Roberts
v.                                                  Magistrate Judge Patricia T. Morris

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

_____/

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (ECF #17); GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF #15); DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF #14)**

## I.    INTRODUCTION

Plaintiff Darrell Zibble ("Zibble") filed a claim for Title II disability insurance benefits. The Administrative Law Judge ("ALJ") denied this claim on April 11, 2018. Zibble and Defendant Commissioner of Social Security filed cross-motions for summary judgment. Magistrate Judge Patricia T. Morris issued a Report and Recommendation ("R&R") recommending that the Court deny Zibble's Motion for Summary Judgment and grant Defendant's Motion for Summary Judgment. Zibble timely objected.

The Court agrees with Magistrate Judge Morris's analysis and **ADOPTS** the R&R. The Court **GRANTS** Commissioner's Motion for Summary Judgment and **DENIES** Plaintiff's Motion.

## II.    STANDARD OF REVIEW

When a party properly objects to any part of a magistrate judge's report and recommendation, the Court reviews these portions *de novo*. Fed. R. Civ. P. 72(b). The party must

object to specific portions of the report, citing a specific source of error, to be entitled to *de novo* review. *Mira v. Marshall,* 806 F.2d 636, 637 (6th Cir. 1986). General objections that do not cite a point of error are not valid objections and have "the same effects as would a failure to object." *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). In effect the Court may treat such objections as waived. *See Bellmore-Byrne v. Comm'r of Soc. Sec.*, No. 15-11950, 2016 WL 5219541, at *1 (E.D. Mich. Sept. 22, 2016).

One of Zibble's objections is barred. It is simply a restatement of a previous argument. Zibble argues that the ALJ failed to develop the record or make findings regarding dosages and amounts of medications that Zibble was taking. Zibble says this approach conflicts with Sixth Circuit precedent. However, this merely restates an argument made in Zibble's brief and is waived. Zibble makes several arguments regarding the side effects of narcotic medications. The other objections about medication side effects were made properly, but Zibble's complaint regarding the responsibility of the ALJ to make specific findings about the dosage of medications is waived because it is a restatement.

Zibble is also barred from raising new issues in his objections if he did not raise them in his original petition. *Murr v. United States*, 200 F.3d 895, 902 n. 1 (6th Cir. 2000). Therefore, Zibble's argument that the ALJ did not properly consult with a medical advisor when determining the RFC is not valid. Zibble argues that the RFC assessment must link the ALJ's findings to specific RFC capabilities; however, since Zibble is raising this issue for the first time in his objection to the R&R, it is waived.

The above arguments are barred on procedural grounds. Zibble's properly made objections are now considered on the merits.

**III. ANALYSIS**

**1. Zibble argues that the ALJ did not properly consider the side effects of narcotic medications when calculating the Residual Functional Capacity.**

Zibble's first objection is that he has significant side effects from taking several narcotic medications, and that the ALJ failed to account for these side effects when calculating the Residual Functional Capacity ("RFC"). The alleged side effects are (1) drowsiness, (2) dizziness, and (3) nausea. Zibble does not press his argument about the effect of nausea on his ability to perform light work; therefore, the Court will focus on the complaints of drowsiness and dizziness. In his Reply to the Commissioner's response to the original Objections, Zibble also claims broadly that his past highly skilled work "is not always congruent to being under the influence of narcotic medications," without specifying further. Doc. No. 22 at PageID.795. The Court will consider this and other references to Zibble's alleged social limitations to be a reference to the impact of narcotic medications on his mental state.

   a. **Drowsiness**

Zibble says that he is drowsy because he is taking narcotic medications. The Record contains references to drowsiness or fatigue at several points. Zibble said that several medications made him "sleepy." Doc. No. 11-6 at PageID.277. Other complaints of fatigue largely relate to Zibble's sleep apnea, which he testified was getting better with treatment. Doc. No. 11-7 at PageID.428. Once he started on a CPAP machine, Zibble went from needing a nap of 30 to 45 minutes nearly every day to only requiring one 30-minute nap per week. *Id.* at PageID.437; *Id.* at PageID.428. Zibble self-reported improvement in "daytime sleepiness," and medical examinations corroborate this improvement. *Id.* at PageID.431. Although the Record contains a few other references to fatigue or drowsiness, Zibble failed to link these complaints to his narcotic medication.

The ALJ did not err by giving more weight to the medical records rather than subjective testimony. *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004) (where plaintiff does not report side effects of medication to physicians, ALJ gave subjective testimony about these side effects less weight than other medical records). Zibble points out his wife's testimony that he falls asleep from one moment to the next (Doc. No 11-2 at PageID.93) but medical evidence contradicts Mrs. Zibble's statement (Doc. No. 11-8 at PageID.667. (finding "no oversedation"); Doc. No. 11-8 at PageID.640 (finding no need for unscheduled breaks throughout a work day)).

There is no evidence that the ALJ dismissed complaints of drowsiness when calculating the RFC, even if it was not framed as considering the sedative effects of medication. The ALJ adequately weighed the symptom itself.

**b. Dizziness**

Zibble complains of dizziness from medications. The ALJ considered Zibble's trouble balancing when calculating his RFC (Doc. No. 11-2 at PageID.76 (relating to balance issues stemming from neuropathy); *Id.* at PageID.81-82 (followed questions about dizziness as a side effect by asking if Zibble still drove while taking the medications); Doc. No. 11-8 at PageID.628 (finding a lack of neurological findings related to balance)). The fact that the ALJ did not frame this as assessing a side effect of narcotic medication does not change the practical effect: balance and dizziness went into the RFC analysis.

The Magistrate Judge did not pass over this analysis or engage in *post hoc* reasoning by examining the entire record. The ALJ adequately considered the symptom of dizziness.

**c. Other symptoms from narcotic medications**

Zibble makes a few references to a general inability to perform skilled work while taking narcotic medications. Doc. No. 22 at PageID.795; Doc. No. 20 at PageID.770. Even though Zibble does not cite any medical evidence to this effect, the Court will nevertheless consider this argument.

Zibble alleges that he would not be able to "carry on a cogent conversation" necessary for retail work. Doc. No. 20 at PageID.770. Elsewhere he makes a broad claim that highly skilled work is incompatible with his side effects.

There is no medical evidence that Zibble has this kind of limitation. He exhibited only mild limitations in interacting with others, which the ALJ considered when calculating RFC. Doc. No. 11-2 at PageID. 49. Examinations from the state psychologist found mild limitations for mental functioning related to concentration and persistence. *Id.* at 50. In other words, there is no medical evidence that Zibble possesses the kind of social or mental limitation that would make light work impossible, even considering his narcotic medications.

### d. The Magistrate Judge did not engage in *post hoc* reasoning

Zibbles argues that the Magistrate Judge engaged in *post hoc* reasoning when reviewing the record. The Magistrate Judge did not engage in *post hoc* analysis by reviewing the ALJ's decision to see if he considered Zibble's symptoms properly.

There is no requirement that the ALJ frame his decision by cause rather than symptom, especially when each symptom that Zibble claims is a side effect of medication appears in the record with multiple possible causes. Zibble's arguments are unpersuasive because he offers no reason to believe that simply reframing the consideration of these symptoms as "side effects of medication" would have any impact on the ultimate outcome of this case.

5

Zibble argues that this case is like *Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328 (E.D. Mich. June 18, 2012). This case is distinguishable from *Christephore* because the ALJ did not fundamentally misframe the analysis. The ALJ in this case also properly considered all of Plaintiff's symptoms, unlike in *Christephore*. The ALJ based his decision on substantial evidence relating to Zibble's documented symptoms.

### 2. Zibble objects to the Magistrate Judge's conclusion that Zibble did not specify how he would modify the RFC

Zibble's second objection is that the ALJ should have considered side effects of narcotic medications explicitly in the decision, and that doing so would have changed the RFC. He fails to state any evidence for this belief.

Plaintiff has the burden to show that his symptoms stem from narcotic medications rather than other causes. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (the claimant bears the burden to establish RFC through Step Four of the analysis). When given the opportunity to question the Vocational Expert and further develop the RFC, Zibble did not bring up any of the symptoms he now says are due to narcotic medications. Doc. 11-2 at PageID.101-03.

In short, Zibble failed to carry his burden of proof relating to the potential side effects of narcotic medications. Zibble also did not show how consideration of side effects of narcotic medications would change the RFC.

### 3. Zibble says that the ALJ misrepresented his daily activities

Zibble's third objection is that the ALJ misrepresented his daily activities, and that the Magistrate Judge erred in finding that this was not reversible error. However, Zibble does not acknowledge that while the Magistrate Judge conceded that the ALJ slightly misrepresented Zibble's daily activities, the overall analysis was accurate.

Even though the ALJ mischaracterized Zibble's ability to perform personal care, the Magistrate Judge found that the ALJ properly considered medical evidence and subjective testimony regarding activities such as shopping, preparing meals, and folding laundry, and even credited a more expansive restriction regarding Zibble's ability to reach overhead. Where the subjective testimony of Zibble or his wife differed with medical evidence (for instance, Mrs. Zibble's testimony regarding shopping trips contradicted both medical evidence about Zibble's undiminished strength and Zibble's own testimony about his ability to shop) the Magistrate Judge found that the ALJ properly weighed the evidence to determine the extent of daily activities (Doc. No. 17 at PageID.749-50).

There were also small discrepancies about Zibble's ability to engage in hobbies such as hunting, fishing, and woodworking. But there is no indication that reassessing these minor mischaracterizations would change the outcome of the ALJ's decision. *Contra Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248-49 (6th Cir. 2007) (extensive misrepresentation of daily activity is grounds for reversal where ALJ failed to consider extent of daily activity and applicability to maintaining a normal work schedule). The difference between folding "small things" when doing laundry, or only needing a table and being able to fold any size of clothing, is not so extensive that it constitutes reversible error.

The ALJ must consider daily activities along with other factors, especially objective medical evidence, but cannot give daily activities undue weight. *See* C.F.R. § 404.1529(c)(3) ("any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . ."). The Magistrate Judge properly

concluded that the discrepancies between the ALJ's decision and the record were not extensive enough to render the whole decision improper.

**4. Zibble argues that the ALJ weighed Dr. Papenfuse's statement inconsistently**

Zibble's fourth objection is that the ALJ improperly weighed the statement of Dr. Papenfuse, the Plaintiff's treating physician, by only giving "great weight" to portions of the statement. Zibble says that the ALJ did not give great weight to Papenfuse's particular statement that methadone can cause sedation. Zibble also argues that the Magistrate Judge engaged in *post hoc* analysis regarding Dr. Papenfuse's statement.

The Magistrate Judge properly considered Dr. Papenfuse's statement. The portion of Dr. Papenfuse's statement that discusses the sedative effects of methadone consists of a prefabricated form. The form asks if the patient has been prescribed any medications with side effects "that may have implications for working," in response to which Dr. Papenfuse wrote "Methadone— sedation." Doc. No. 11-8 at PageID.640. On the next part of the form, Dr. Papenfuse wrote that Zibble did not require unscheduled breaks from work. *Id.*

Dr. Papenfuse's entire statement indicates that there was no actual sedative effect due to methadone. He noted that Zibble exhibited "no oversedation" on one occasion (Doc. No. 11-8 at PageID.667) and stated that Zibble was not in an "off-work status" and did not require unscheduled breaks during the day (*Id.* at PageID.640) as may have been expected if Zibble was suffering from sedation.

Zibble does not cite to a specific instance in the record where he complained to Dr. Papenfuse or any other doctor that he suffered from sedation due to methadone. As discussed above, Zibble's drowsiness and fatigue could stem from multiple causes. The ALJ fully considered the symptom of drowsiness. The Magistrate Judge correctly examined the whole of

Dr. Papenfuse's statement and considered the overall record when determining the weight to give to the statement about the sedative effect of methadone.

The Magistrate Judge did not engage in *post hoc* reasoning. Zibble claims that the Magistrate Judge exceeded the scope of review by saying that Dr. Papenfuse indicated a "possibility" of sedation from methadone. The Court does not agree. When viewed alongside the entire record, Dr. Papenfuse did not state an actual symptom of sedation due to methadone, only that sedation can be a side effect of the medication. This objection is without merit.

**IV. CONCLUSION**

The Court **ADOPTS** the Report and Recommendation**.** The Court **GRANTS** the Commissioner's Motion for Summary Judgment and **DENIES** the Plaintiff's Motion.

**IT IS ORDERED.**

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: September 17, 2019